# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Derek J. Walsh, | ) |
| | ) Case No. 1: 14-cv-03412 |
| Plaintiff, | ) |
| | ) Judge Virginia M. Kendall |
| v. | ) |
| | ) |
| Kaluzny Bros. Inc., Peter Kaluzny, Unknown Kaluzny Bros. Inc. Employees, Officer John S. Huizenga, Police Chief Robert J. Dykstra, Unknown Rockdale Police Officers, and the Village of Rockdale, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO DISMISS

J. Erik Connolly
Christopher J. Letkewicz
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601

*Attorneys for Plaintiff Derek J. Walsh*

## INTRODUCTION

Plaintiff Derek Walsh was arrested twice for a crime he did not commit. On January 31 and February 1, 2013, the Rockdale Police Department (the "Rockdale Police") arrested Walsh for stealing a wooden spool of copper wire from his employer, Defendant Kaluzny Bros., Inc. The primary investigators, Defendants Officer John Huizenga and Police Chief Robert Dykstra, had no witnesses who saw Walsh remove the few hundred pound spool from Kaluzny Bros.' premises. They had no witnesses who saw Walsh with the wire. They had no witnesses who claimed that Walsh admitted to the theft. In fact, they had no evidence that wire had been stolen.

Their entire case rested on statements they knew to be false or otherwise did not incriminate Walsh. At the beginning of their "investigation," Officer Huizenga received a description of the purportedly stolen copper wire from Defendant Peter Kaluzny ("Peter"), co-owner and maintenance supervisor at Kaluzny Bros. Officer Huizenga then received a photograph from a local scrapyard of a mess of copper wire that Walsh had sold to them. The photograph did not match Peter's description. Further, the copper wire did not have any distinctive characteristics such as a logo or other distinguishing mark. Despite that, both Peter and Thomas George, plant manager at Kaluzny Bros., claimed that the copper wire belonged to Kaluzny Bros. These statements were knowingly false. And Officer Huizenga and Chief Dykstra knew that these statements were false.

The case against Walsh was built on lies, and Walsh was unable to expose those lies until he went to trial in November 2013. The trial judge granted Walsh's motion for directed verdict, concluding, that this "is one of those *rare instances*" where the State "is not able to meet the corpus delicti and demonstrate that in fact a crime occurred." (Am. Compl. ("AC") ¶ 102.)

Walsh now brings this Complaint. Over the course of 138 paragraphs, Walsh asserts (1) Section 1983 claims against Officer Huizenga and Chief Dykstra because they had him arrested without probable cause in violation of the Fourth Amendment, (2) a Section 1983 claim against Officer Huizenga, Chief Dykstra and Peter Kaluzny for a conspiracy to have Walsh arrested without probable cause, and (3) a malicious prosecution claim against all Defendants. The

Rockdale Defendants (Officer Huizenga, Chief Dykstra and the Village of Rockdale) and Kaluzny Defendants (Peter and Kaluzny Bros.) moved separately to dismiss. The motions are at odds with one another and demonstrate that they lack merit.

***The Rockdale Defendants' Motion.*** The Rockdale Defendants rest virtually their entire motion on the argument that probable cause existed for Walsh's arrests because "a quick glance at the photograph demonstrates that the four colors [of the copper wire] match perfectly" with what was "taken from Kaluzny Brothers." (Rockdale MTD 7.)[1] This apparent obvious match, however, was not so apparent to the Kaluzny Defendants, who say virtually *nothing* regarding the photograph in their motion to dismiss. In fact, they *concede* that Walsh sufficiently alleged "the absence of probable cause for [Walsh's criminal] proceeding" for his malicious prosecution claim. (*See* Kaluzny MTD 9-13 (citation omitted).)[2]

In any event, the Rockdale Defendants' argument should be rejected because a reasonable person either taking a "quick glance" or staring it for hours would *not* conclude that the "four colors [of the copper wire] match perfectly" with what was "taken from Kaluzny Brothers." (Rockdale MTD 7.) Indeed, the judge at Walsh's trial thought it was unclear what the wire colors were. But even if the colors did match, the Rockdale Defendants ignore that the copper wire in the photograph had "no distinguishing characteristics," thus making any positive identification impossible. (AC ¶ 54(d).) The Rockdale Defendants' motion is further misplaced because probable cause requires evidence of a crime, *see, e.g.*, *Stevens v. Dewitt Cnty.*, 2012 WL 1066890, at *5 (C.D. Ill. Mar. 28, 2012), and "reasonably trustworthy information" establishing that the arrestee violated the law, *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 81 F. Supp. 2d 890, 892 (citations and internal quotations omitted). Neither of those were present here.

The Rockdale Police's final argument that Officer Huizenga and Chief Dykstra have qualified immunity should be rejected as premature. Courts deny qualified immunity claims at

---

[1] "Rockdale MTD" refers to Defendants Village of Rockdale, Officer John S. Huizenga & Police Chief Robert J. Dykstra's Motion to Dismiss (Dkt. 46).

[2] "Kaluzny MTD" refers to Defendants Kaluzny Bros., Inc. and Peter Kaluzny's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 43).

the pleadings stage where, such as here, it cannot be "disentangled from disputed facts" regarding probable cause. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

***The Kaluzny Defendants' Motion.*** The Kaluzny Defendants' motion raises a host of arguments that are contrary to Seventh Circuit and Illinois law and otherwise misstate Walsh's actual complaint allegations. The Kaluzny Defendants urge the Court to dismiss the complaint because it "is replete with speculative and conclusory statements" and is "a conspiracy theory novella." (Kaluzny MTD 1-2.) The Rockdale Defendants make no such argument and for good reason. As they acknowledge, at the pleadings stage, the Court is merely "test[ing] the sufficiency of the Complaint, and *not* its merits." (Rockdale MTD 5 (emphasis added).) The Kaluzny Defendants are attempting to apply a summary judgment standard at a motion to dismiss, which is inappropriate because "the court must accept as true all facts alleged in the complaint." *Ivy v. Powers*, 2009 WL 230542, at *2 (N.D. Ill. Jan. 30, 2009) (Kendall, J.).

The Kaluzny Defendants' claim-specific arguments are equally misplaced. They wrongly assert that Walsh's conspiracy claim rests solely on "Kaluzny Brothers … be[ing] in business in Rockdale for over sixty (60) years, it's the largest employer in Rockdale, and that [Walsh] witnessed police officers socializing with Defendant [Peter]." (Kaluzny MTD 7.) Again, the Rockdale Defendants make no such claim. Further, Walsh's Complaint rests on far more than that. It alleges: the parties involved (Officer Huizenga, Chief Dykstra, Peter, and George), the date of the conspiracy (January-February 2013), the general purpose (to have Walsh arrested without probable cause), and the nature of the conspiracy (e.g., Peter and George making deliberately false statements and the Rockdale Defendants knowingly relying on such false statements). That is all that is required to be pled under the Kaluzny Defendants' own cases. (*Id.* 6 (citing *inter alia Ibarra v. City of Chi.*, 816 F. Supp. 2d 541 (N.D. Ill. 2011).)

Their fallback argument that their conduct was "reasonable, proper and lawful" is belied by Walsh's Complaint allegations. (*Id.* 8 (alterations omitted).) Walsh pleads extensive facts showing that there was no probable cause and that Peter and George made deliberately false statements to the police, the very antithesis of "reasonable, proper, and lawful" conduct.

-3-

The Kaluzny Defendants' next argument that Walsh's malicious prosecution claim should be dismissed because he "failed to plead special damages" is contrary to clear Illinois law. (*Id.* 11.) Illinois courts only require "a showing of special injury where the underlying prosecution is a civil one, they have *not* required such a showing where, as here, the underlying action is a *criminal* prosecution." *Randle v. City of Chi.*, 2000 WL 1536070, at *5 (emphasis added). The lack of merit in the Kaluzny Defendants' argument is made clear in their multiple-page diatribe on Walsh's prior criminal history and his pending criminal charges. That has no relevance here. The issue before the Court is whether Walsh has adequately alleged a claim, not whether he is a good person.

For all these reasons and those set forth below, Defendants' motions should be denied.

## FACTUAL BACKGROUND

***Walsh Is Hired by Kaluzny Bros.*** In January 2012, Kaluzny Bros. hired Walsh to work as a press operator. (AC ¶ 19.) As a press operator, Walsh ran machines that recycled animal by-products and cook oil that Kaluzny Bros. later sold. (*Id.* ¶¶ 10, 19.) Walsh shortly thereafter joined the union many of his co-workers were members of: The United Food and Commercial Workers Local 1546 (the "Union"). (*Id.* ¶ 20.) Walsh quickly earned the respect of his co-workers, who named him acting union steward in or around August 2012, and served as a liaison between the Union and Kaluzny Bros.' management. (*Id.* ¶ 23.)

***Kaluzny Bros. Become Angered by Walsh's Involvement in the Union.*** Shortly after Walsh was named acting union steward, the Union entered contract negotiations with Kaluzny Bros. (*Id.* ¶ 24.) Walsh urged his Union member co-workers to reject the contract through face-to-face conversations and the posting of signs and leaflets in the worker break room. (*Id.* ¶¶ 26-27.) Walsh's conduct angered Kaluzny Bros.' management, including Peter and George. (*Id.* ¶ 28.) George ripped down the signs and leaflets posted by Walsh. (*Id.* ¶ 29.)

Despite the Kaluzny Bros.' intimidation efforts, Walsh convinced his Union co-workers to reject the Kaluzny Bros.' contract offers and to hold a meeting to discuss the possibility of going on strike. (*Id.* ¶¶ 30-31.) At the meeting, the Union members agreed to keep negotiating,

but to go on strike if Kaluzny Bros. did not significantly improve its contract offer. (*Id.* ¶ 31.)

Shortly after the meeting, the Kaluzny Bros. made a second contract offer. (*Id.* ¶ 33.) Walsh again urged his Union co-workers to reject the contract through face-to-face conversations and the posting of leaflets. (*Id.*) George again took down the leaflets. (*Id.*) Despite Walsh's objections, his Union co-workers approved the Kaluzny Bros.' contract. (*Id.* ¶ 35.)

The Union appreciated Walsh's efforts in fighting for its rights and voted him permanent union steward. (*Id.* ¶ 35.) Kaluzny Bros.' management, including Peter and George, were very concerned that Walsh would continue to vigorously advocate for his Union co-workers' rights and would not merely go along with management's desires and decisions. (*Id*. ¶ 36.)

***A Missing Wooden Spool Provides Kaluzny Bros. an Opportunity to Get Rid of Walsh.*** On January 2, 2013, Peter noticed a wooden spool of copper wire, weighing approximately a few hundred pounds, missing from a boiler room. (*Id.* ¶¶ 37, 39.) The boiler room was unlocked and anyone at Kaluzny Bros. would have access to the wire. (*Id.* ¶ 38.) Peter informed George of the missing wire, who then told Kaluzny Bros. employees to "keep an eye out." (*See id.* ¶¶ 41-42.) Andrew Smith, a Kaluzny Bros. employee, told George a few days later about a conversation he had with Walsh in which Walsh said that "he had copper." (*Id.* ¶ 43.)

Peter and George then decided to exploit this vague statement and began a scheme to get rid of Walsh to ensure that he would no longer be causing problems for Kaluzny Bros.' management. (*See id.* ¶ 44.) Peter called the Rockdale Police, claiming that a wooden spool of copper wire had been stolen. (*Id.* ¶ 48.) The Rockdale Police and Kaluzny Bros. had a close relationship that had developed over the 60 years that Kaluzny Bros. has been in business as one of the largest employers in the small town of Rockdale. (*Id.* ¶ 46.) In fact, Walsh observed Rockdale police officers socializing with Peter, George, and other Kaluzny Bros. employees on multiple occasions. (*Id.* ¶ 47.)

***The Rockdale Police Conduct a Deliberately Incomplete Investigation.*** Officer Huizenga responded to Peter's call. (*Id.* ¶ 49.) Peter described to Officer Huizenga that the wire was approximately three inches wide and flat, with black insulation, with four individual

-5-

copper wires inside that insulation that were the following colors: yellow, red, black, and green. (*Id.*)  George relayed to Officer Huizenga Smith's statement to ensure that the investigation focused on Walsh.  (*Id.* ¶ 50.)

Officer Huizenga then spoke with Amy Tuttila at Lemont Scrap, a nearby scrap yard. (*Id.* ¶ 51.)  After providing Tuttila a description of Walsh's car, Tuttila gave Officer Huizenga a copy of the invoice for scrap brought in by Walsh and photographs of Walsh's car and scrap. (*Id.* ¶¶ 51, 53.)[3]  The photograph of Walsh's scrap showed an assortment of wires.  (*See id.* ¶ 53.)[4]  The scrap photograph did not match Peter's description to Officer Huizenga in four critical ways: (1) it was not on a spool; (2) it was not approximately three inches wide and flat with black insulation with yellow, red, black, and green wires inside; (3) it was impossible to tell the exact colors of the wires; and (4) the wires had no distinguishing characteristics.  (*Id.* ¶ 54.)

Despite the inconsistency between the photograph and Peter's description, Officer Huizenga showed the photograph to both Peter and George, who both deliberately and falsely stated that the photograph showed the copper wire stolen from Kaluzny Bros.  (*Id.* ¶ 56.)  Officer Huizenga (and later Chief Dykstra) knew that these statements were false.  (*Id.* ¶¶ 57-58.)

In an unusual move, Chief Dykstra became personally involved in the investigation by making contact with Tyrone Smego, whose name appeared on the invoice provided by Tuttila. (*See id.* ¶¶ 61-62.)  Chief Dykstra placed Smego under arrest and refused to release him until he made a statement.  (*Id.* ¶ 63.)  Smego then made a statement that Walsh told him that he found copper in an alley, but then later said he got it from his uncle.  (*Id.* ¶ 64.)

**Walsh Is Arrested Twice.**  Conducting no further investigation, Officer Huizenga asked Walsh through his girlfriend to come to the police station.  (*Id.* ¶ 73.)  Walsh went down to the station on January 31, 2013, and once there, he was escorted into an interrogation room and handcuffed to a table.  (*Id.* ¶¶ 74-75.)  Walsh was forced to spend hours being handcuffed and

---

[3] The Rockdale Defendants misstate that the invoice reflects that Walsh brought in "approximately 500 pounds of copper wire."  (Rockdale MTD 3.)  The invoice actually states that only 321 pounds of "[i]nsulated wire" was brought in.  (Rockdale MTD Ex. 1, Original Invoice.)

[4] A color copy of the photograph is included in Walsh's Complaint.  (AC ¶ 53.)

was not released until after he refused multiple times to make a statement. (*See id.* ¶¶ 76-81.) But on his way out of the station, Chief Dykstra threatened Walsh that he was "going to walk a warrant through the courthouse." (*Id.* ¶ 81.) Chief Dykstra made good on this threat by having Officer Huizenga obtain an arrest warrant that was based on the knowingly false statements discussed above. (*See id.* ¶ 83.) Walsh was then arrested a second time on February 1, 2013, and charged with two counts of felony theft. (*Id.* ¶¶ 85-86.) Walsh remained in jail for nine (9) days until February 10, 2013. (*See id.* ¶ 87.)

***Walsh Is Fired.*** When Walsh returned to work, he was fired for cause (the only basis for which he could be fired) due to his alleged involvement in the theft. (*Id.* ¶¶ 45, 89.)

***Walsh Is Found Not Guilty.*** In November 2013, nine (9) months after his arrest, Walsh went to trial. (*Id.* ¶ 92.) At the end of the State's case, Walsh moved for directed verdict, which Judge Edward Burmila granted. (*Id.* ¶ 102.) He reasoned:

> A supposition was made by management that the copper wire which could not then be located was in fact stolen. *Now, no one saw the defendant with the wire. No one saw anybody remove the wire from the premises.* It was simply there one day and not there the next.
> ….
> The wire could not be located after January the 3rd of 2013. And that sometime after that *the defendant and a friend of his sold wire that was not in black casing, was not distinguishable in any specific fashion*, at Lemont Scrap….
>
> Now, it's not for lack of effort on the State's part, and it isn't even a question of lack of proof beyond a reasonable doubt, because the corpus delecti does not have to be proven beyond a reasonable doubt. There only has to be some evidence to indicate that a crime occurred. Then we would apply the defendant's statement and see what the circumstances would be thereafter. This, in the Court's opinion, *is one of those rare instances that the [State] simply is not able to meet the corpus delicti and demonstrate that in fact a crime occurred.* (*Id.*)

## LEGAL STANDARD

"To survive a motion to dismiss, the plaintiffs' complaint need only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098 (7th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). A plaintiff's "pleading burden should be commensurate with the amount of information available to [him]." *Id.* at 1100 (citation and internal quotations omitted). In ruling on a motion to dismiss, "the court must

accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff." *Ivy*, 2009 WL 230542, at *2. As the Rockdale Defendants concede, a motion to dismiss only "test[s] the sufficiency of the Complaint, and not its merits." (Rockdale MTD 4-5 (citing *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)). Accordingly, a court "do[es] not ask did these things happen" but rather "*could* these things have happened." *Olson*, 784 F.3d at 1099 (citations and internal quotations omitted).

## ARGUMENT

I.  **The Rockdale Defendants' Motion Should Be Denied Because Walsh Alleged That They Lacked Probable Cause.**

Police officers "have probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have *reasonably trustworthy information* are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 984 (N.D. Ill. 2009) (citation and internal quotations omitted) (alterations omitted); *see also Pasiewicz*, 81 F. Supp. 2d at 892 (same). "Mere suspicion is not enough." *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir. 1990); *see also Wagner v. Cnty. of Cattaraugus*, 866 F. Supp. 709, 714 (W.D.N.Y. 1994) ("Conjecture, surmise or suspicion are not enough to justify an arrest.") Whether an officer has probable cause is typically a "question[] of fact which cannot be determined on a motion to dismiss." *Contorno v. McCann*, 2005 WL 281228, at *6 (N.D. Ill. Feb. 2, 2005). Here, Walsh has alleged extensive facts showing that the Rockdale Defendants lacked probable cause. Specifically, Walsh alleged that (1) the Rockdale Defendants did not have evidence that a crime was committed, (2) the photograph they obtained and Peter and George's subsequent identification were not "reasonably trustworthy information," and (3) they failed to obtain any other evidence suggesting that Walsh committed the theft.

### A.  **The Rockdale Defendants did not have evidence that a crime had been committed.**

As an initial matter, the Rockdale Defendants did not even have evidence that copper wire had been stolen from Kaluzny Bros. Peter noticed one day that copper wire was missing

from a boiler room, a room that was unlocked and that anyone at Kaluzny Bros. could get into. (AC ¶¶ 37-38.) "It was simply there one day and not there the next." (*Id.* ¶ 102.) No Kaluzny Bros. employee, guest, security guard, or security camera saw Walsh remove a few hundred pound wooden spool of wire. (*See id.* ¶¶ 68, 70-71, 102.) No one saw Walsh with the wire. (*Id.* ¶¶ 68, 102.) There was no evidence that the wire had been stolen, as opposed to misplaced or used without Peter or George's knowledge. This renders the Rockdale Defendants' probable cause argument fatal. *See Stevens*, 2012 WL 1066890, at *5 (denying motion to dismiss where plaintiff alleged defendant "knew that the investigation uncovered no evidence of a crime").

> **B.    The photograph and subsequent identification were not reasonably trustworthy information.**

Even if there was evidence of a crime, the photograph obtained by Officer Huizenga and the subsequent identifications by Peter and George do not establish probable cause. Focusing first on the photograph, none of the Defendants dispute that the photograph does not match Peter's initial description in that (1) it was not on a wooden spool and (2) it was not in black insulation. (AC ¶ 54(a)-(b).) The Rockdale Defendants dispute Walsh's claim that "[i]t is impossible to tell the exact colors of the copper wires," (AC ¶ 54(c)), claiming that a "quick glance" of the photograph "demonstrates that the four colors match perfectly" to the Kaluzny Bros.' wires. (Rockdale MTD 7.)[5] This claim, however, is belied by the photograph itself, the Kaluzny Defendants' motion to dismiss, and Judge Burmila's comments at Walsh's trial. Walsh would not have alleged "[i]t is impossible to tell the exact colors," if it was not, in fact, "impossible to tell." (AC ¶ 54(c).) Indeed, if the wire colors in the photograph so obviously matched Peter's description such that one could determine the match upon a "quick glance," (Rockdale MTD 7), then surely the Kaluzny Defendants would have made the exact same argument in their motion. But they did not. This is unsurprising given Judge Burmila's comments at Walsh's trial, who stated regarding one of the wires in the photograph, "It's even

---

[5] The photograph included in the Rockdale Defendants' motion is larger than the one provided to Walsh by Defendant Village of Rockdale, which was presumably the version that was shown to Peter and George. (*Compare* Rockdale MTD Ex. 1, *with* Photographs Provided to Walsh, attached hereto as Ex. A.)

-9-

debatable whether that's green. Some people could think it's blue." (Walsh Crim. Tr. 68, attached hereto as Ex. B.)[6]

But even if the Court concludes that the wire colors in the photograph match Peter's description, that does not establish probable cause because the wires lacked any "distinguishing characteristics" that would allow an identification. (AC ¶ 54(d).) None of the Defendants contend that the wire in the photograph had some type of distinguishing mark or characteristic. Nor could they. Judge Burmila remarked that the wires in the photograph "w[ere] not distinguishable in any specific fashion." (AC ¶ 102.) The Rockdale Defendants' color match argument is akin to arguing that if a person reported having red, blue, black, and green Bic pens stolen and there is a photograph showing red, blue, black, and green Bic pens, that is enough for probable cause. That is absurd. The Rockdale Defendants' color argument should be rejected.

Peter and George's identifications does not raise the evidence against Walsh over the probable cause bar. Because the wires in the photograph lacked any distinctive characteristic, it was not possible to positively identify that wire as Kaluzny Bros.' wire, and any such identification should have been viewed with suspicion and warranted further investigation. *See Pasiewicz*, 81 F. Supp. 2d at 893 ("[I]f information from … [a] victim of a crime would lead to a reasonable officer to be suspicious, the officer should conduct further investigation before making an arrest.") (citations and internal quotations omitted); *Ibarra*, 816 F. Supp. 2d at 548 (same); (*see also* Rockdale MTD 6 (witness must be "*reasonably credible*" for probable cause to exist (quoting *Mustafa v. City of Chi.*, 442 F.3d 544, 548 (7th Cir. 2006) (emphasis added)). Yet, here, the identification was not viewed with suspicion but, instead, was heavily relied on by the Rockdale Defendants in arresting Walsh. (*See* AC ¶ 83.) Further, the Rockdale Defendants failed to conduct the "further investigation" needed to establish probable cause, as explained in greater detail below.

---

[6] The Court can take judicial notice of the transcript from Walsh's criminal trial. *White v. Gaetz*, 588 F.3d 1135, 1137 n.2 (7th Cir. 2009) (taking judicial notice of state court transcript in habeas appeal).

### C. The Rockdale Defendants failed to obtain any other evidence to establish Walsh committed the theft.

Once Peter and George made their "identifications," the only other investigation the Rockdale Defendants undertook prior to arresting Walsh was getting statements from Smith and Smego. (*See* AC ¶¶ 60-64.) Neither statement added any credibility to Peter and George's identifications. Neither told the Rockdale Defendants that Walsh got the copper wire from Kaluzny Bros. (*See id.* ¶¶ 60, 64.) Nor did they indicate that they even suspected Walsh stole the copper wire. Instead, Smith simply told the Rockdale Defendants that Walsh told him "he had copper" and Lemont Scrap paid the most for copper. (*Id.* ¶¶ 43, 60.) And Smego told the Rockdale Defendants that Walsh first said he found the wire in an alley and then later said he got it from his uncle. (*Id.* ¶ 64.) That tells the Rockdale Defendants nothing as to Walsh's culpability. Such vague and innocuous statements do not help establish probable cause. *See Wagner*, 866 F. Supp. at 715 ("[T]he vague, general comments of [the witness] hardly justified the drastic action taken by the police here [arresting plaintiffs].").

\*\*\*

The Rockdale Defendants failed to gather any "reasonably trustworthy information" that Walsh stole copper wire, and at best, gathered evidence that raised "a mere suspicion." The Seventh Circuit has made clear, however, that "mere suspicion is not enough." *Ingrao*, 897 F.2d at 862. Accordingly, the Rockdale Defendants' probable cause argument should be rejected.

### II. The Rockdale Defendants' Qualified Immunity Claim Is Premature, And In Any Event, Is Meritless.

In the alternative, the Rockdale Defendants claim that they have qualified immunity. As an initial matter, qualified immunity should not be granted at the pleadings stage where it cannot be "disentangled from disputed facts" regarding probable cause. *Gonzalez*, 578 F.3d at 540; *see also Pasiewicz*, 81 F. Supp. 2d at 893.[7] This is because "[i]t is rarely appropriate to address the factual questions for qualified immunity on a 12(b)(6) motion unless the plaintiff has failed to

---

[7] Although *Gonzalez* was decided at summary judgment, courts have relied on it at the pleadings stage. *See, e.g.*, *Phipps v. Adams*, 2012 WL 686721, at \*2-3 (S.D. Ill. Mar. 2, 2012).

-11-

allege the violation of a clearly established constitutional right." *Houston v. Makarzyk*, 1997 WL 43244, at *3 (N.D. Ill. Jan. 24, 1997).[8] Here, qualified immunity cannot be "disentangled from disputed facts" regarding probable cause. *See Gonzalez*, 578 F.3d at 540. Walsh alleged facts showing the lack of probable cause. *See supra* Part I. And the Rockdale Defendants fail to cite a *single* case in which the court found that a police officer had qualified immunity on the pleadings.[9]

Putting aside the prematurity of the claim, Walsh has far exceeded pleading sufficient facts to overcome this claim. The Rockdale Defendants acknowledge that qualified immunity requires a showing that "a reasonable officer could have believed that probable cause existed." (Rockdale MTD 9.) That is not the case here. As explained above, *see supra* Part I, the Rockdale Police had no evidence of a crime, a photograph of copper wire that did not match Peter's description, identifications from Peter and George that the Rockdale Police knew to be false, and vague statements from Smith and Smego that are in no way incriminating. Further, the Rockdale Defendants' claim that "an eyewitness provided an account of what allegedly transpired" is false. (Rockdale MTD 9.) Not a single witness saw Walsh take copper wire from Kaluzny Bros. (AC ¶¶ 68, 102.)

No reasonable officer could have believed that probable cause existed. The fact that the Rockdale Defendants obtained a warrant for Walsh's second arrest does not change this. *See Olson*, 784 F.3d at 1095 ("[P]laintiffs allege that the detectives … found no evidence or witnesses that linked Olson to the crime. The fact that Olson was arrested anyway on a warrant based on information from the defendants plausibly suggests that the defendants gave false information, and they are not entitled to qualified immunity …."). At a minimum here, Walsh's allegations raise fact questions that warrant discovery to further investigate these claims.

---

[8] That is not the case here because the right to not be arrested without probable cause "has been clearly established for a long time." *Gonzalez*, 578 F.3d at 541.

[9] All of the cases relied on by the Rockdale Defendants, (*see* Rockdale MTD 9), were decided at summary judgment rather than on the pleadings. *See Pearson v. Callahan*, 129 S. Ct. 808, 814 (2009); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1010 (7th Cir. 2006); *Hunter v. Bryant*, 502 U.S. 224, 226 (1991).

**III.     Walsh Alleged Facts Supporting His Conspiracy Claim.**[10]

In order to allege a conspiracy claim, a plaintiff only has to allege "the parties, the general purpose[,] the approximate date of the conspiracy" and "the nature of the … agreement." *Ibarra*, 816 F. Supp. 2d at 553. A plaintiff is not required "to plead the specific statements with more particularity when they have no knowledge of [those facts] and can learn of them only through discovery." *Olson*, 784 F.3d at 1100. In short, a plaintiff must simply put a defendant on "notice of what he is charged with." *Chatman v. City of Chi.*, 2015 WL 1090965, at *8 (N.D. Ill. Mar. 10, 2015) (citation and internal quotations omitted).

Walsh has met each pleading requirement for a conspiracy claim. He alleges the parties involved: Officer Huizenga, Chief Dykstra, Peter, and George. (*See, e.g.*, AC ¶¶ 2, 45, 59, 122.) He alleges the general purpose: to deprive him of his constitutional right against being arrested without probable cause. (*See, e.g.*, *id.* ¶¶ 2, 45, 122.) He alleges the approximate date of the conspiracy: January 2013-February 2013. (*See, e.g.*, *id.* ¶¶ 45, 48, 85.) Finally, he alleges the nature of the conspiracy: deliberately false statements by Peter and George and Officer Huizenga and Chief Dykstra knowingly relying on those false statements, conducting a deliberately incomplete investigation, and arresting Walsh on January 31 and February 1, 2013, etc. (*See, e.g.*, *id.* ¶¶ 56-58, 70-71, 75, 85, 123.) In short, the Kaluzny Defendants' argument that Walsh's conspiracy claim rests solely on "Kaluzny Brothers … be[ing] in business in Rockdale for over sixty (60) years, it's the largest employer in Rockdale, and that [Walsh] witnessed police officers socializing with Defendant [Peter]" is false. (Kaluzny MTD 7.)

The Kaluzny Defendants complain that Walsh's Complaint "is replete with speculative and conclusory statements," "states conclusions, opinions of unspecified individuals and other arguments, totally unsupported by fact," and is "a conspiracy theory novella." (Kaluzny MTD 1-2.) This argument, however, is belied by the Court's motion to dismiss review standards, which "accept[s] as *true* all facts alleged in the complaint," *Ivy*, 2009 WL 230542, at *2, and only

---

[10] The Rockdale Defendants rests their conspiracy argument on probable cause existing for Walsh's arrests. Because their probable cause argument fails, *see supra* Part I, so does their conspiracy argument.

-13-

determines "the sufficiency of … plaintiff's complaint, not the merits of his case," *Hartford Cas. Ins. v. Constr. Builders in Mot.*, 2012 WL 5342312, at *3 (N.D. Ill. Oct. 29, 2012) (Kendall, J.).

*Ibarra*—heavily relied on by the Kaluzny Defendants (*see* Kaluzny MTD 6)—is instructive here. There, plaintiff alleged that Chicago Police Defendants conspired with a member of the Pritzker family to have him falsely arrested in order "to protect Pritzker because of his political connections and family's influence." 816 F. Supp. 2d at 545-46. The Chicago Police Defendants carried out the conspiracy "by covering up the evidence against Pritzker, coercing and intimidating witnesses to change their statements, fabricating evidence, and failing to conduct an adequate investigation." *Id.* at 553 (citations omitted). The Kaluzny Defendants would no doubt consider these allegations "a conspiracy theory novella." (Kaluzny MTD 2.) Yet, the *Ibarra* court concluded, "[T]hese allegations plausibly state a Section 1983 claim," pointing out that it must "accept[] as true all factual allegations in the complaint." *Ibarra*, 816 F. Supp. 2d at 547, 553. The Kaluzny Defendants' efforts to dismiss Walsh's allegations as "a conspiracy theory novella," (Kaluzny MTD 2), misses the point of what this Court is to consider at this stage of the litigation.

In a fallback argument, the Kaluzny Defendants argue that even if Defendants "were in agreement," their conduct is excused because it was "reasonable, proper, and lawful." (Kaluzny MTD 8 (alterations omitted).) Neither of the cases they cite discuss conduct that would excuse being in a conspiracy, but rather simply discuss probable cause. (*See id.* (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009)).) If the Kaluzny Defendants are, in fact, arguing that Walsh's conspiracy claim should be dismissed because there was probable cause, it is meritless. *See supra* Part I.

Regardless, the Kaluzny Defendants' conduct was anything but "reasonable, proper, and lawful." (Kaluzny MTD 8.) They made intentionally false statements to the police. (*E.g.*, AC ¶ 56.) Further, their claim that their "investigation … uncovered information leading them to believe a theft occurred," (Kaluzny MTD 9), is false. *See supra* Part I.A. They fail to point to any allegations in the Complaint that would excuse their participation in a conspiracy.

**IV.     Walsh States A Claim For Malicious Prosecution.**[11]

The Kaluzny Defendants do not contest that Walsh alleged "(1) the commencement or continuance of an original criminal or civil judicial proceeding by [them]; (2) the termination of the proceeding in favor of [Walsh]; (3) *the absence of probable cause* for such proceeding; [and] (4) the presence of malice on the[ir] part." (*See* Kaluzny MTD 9-13 (citation omitted) (emphasis added).) They only contend that Walsh's malicious prosecution claim should be dismissed because Walsh "failed to plead special damages, as required by Illinois law." (*Id.* 11.) The Kaluzny Defendants misstate Illinois law. Where, as here, the malicious prosecution claim stems from a *criminal* proceeding, as opposed to a civil proceeding, a plaintiff is *not* required to plead special damages. *See Randle*, 2000 WL 1536070, at *5 (concluding under Illinois law that "[w]here there is a criminal prosecution, an arrest, or seizure of property, *no* showing of 'special injury' is required.); *Burge v. Harvey Police Officers*, 1997 WL 610045, at *3 (N.D. Ill. Sept. 25, 1997) (same). Each of the cases cited by the Kaluzny Defendants, (*see* Kaluzny MTD 10), involves malicious prosecution claims based on civil, not criminal, proceedings.[12] Accordingly, the Kaluzny Defendants' special damages argument fails.

## CONCLUSION

Walsh's complaint far exceeds "the minimum pleading requirements under Rule 8." *Vosberg v. Smith & Nephew*, 2013 WL 3064420, at *3 (N.D. Ill. June 18, 2013) (Kendall, J.). Defendants' motions to dismiss should be denied.[13]

---

[11] The Rockdale Defendants rest their motion to dismiss on this claim again on probable cause, which should be rejected. *See supra* Part I.

[12] *See Hahn v. Vill. of Downers Grove*, 1999 WL 167036, at *5 (N.D. Ill. Mar. 19, 1999); *Hulcher v. Archer Daniels Midland Co.*, 409 N.E.2d 412, 414-15 (Ill. App. Ct. 1980).

[13] The Kaluzny Defendants also ask the Court to dismiss Peter because Walsh "made no factual allegations that Peter … participated in any of the incidents outlined." That is inaccurate. (*See, e.g.*, AC ¶¶ 2-3, 11, 37, 44-45, 47-49, 56.)

They also request, in the alternative to dismissing the complaint, to strike portions of *63* separate paragraphs in Walsh's complaint. (Kaluzny MTD 2-4.) They provide no legal basis for this relief. Thus, it should be denied. *See, e.g.*, *Woman's Newspapers, LLC v. Cavanaugh*, 2005 WL 3591808, at *5 (N.D. Ill. Dec. 29, 2005) ("Because defendants' argument is not supported by citations to pertinent authority, it is rejected.").

Dated: July 16, 2015

Respectfully submitted,

By: /s/ Christopher J. Letkewicz
    J. Erik Connolly
    Christopher J. Letkewicz
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-9703
    Phone: (312) 558-5600
    econnolly@winston.com
    cletkewicz@winston.com

*Attorneys for Plaintiff Derek J. Walsh*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 16, 2015, I caused a true and correct copy of the foregoing to be served upon counsel of record by electronic filing.

                                                  /s/ Christopher J. Letkewicz
                                                  One of the attorneys for Plaintiff