IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK J. WALSH, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No. 14 C 3412 |
| KALUZNY BROTHER'S INC., et al., | ) Judge Virginia M. Kendall |
| Defendant. | )<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Derek Walsh claims that defendants Robert Dykstra, John Huizenga, and unknown Rockdale police officers violated his Fourth Amendment rights by arresting him twice. He further claims that all defendants conspired to unconstitutionally arrest him. Walsh alleges that defendants Kaluzny Brother's Inc., Peter Kaluzny, and Thomas George conspired with Dykstra, Huizenga, and unknown Rockdale police officers to arrest him without probable cause and charge him for theft of a barrel and copper wire. Walsh alleges that the officers relied on false statements deliberately made by Kaluzny and George knowing that they were false. As a result, the Rockdale police charged Walsh with theft. Later, the charge was dismissed at the close of trial when the court granted Walsh's motion for a directed verdict. His five-count complaint seeks relief for: (1) two false arrests; (2) conspiracy to violate his constitutional rights under Section 1983; (3) malicious prosecution under Illinois law; and (4) indemnification by the Village of Rockdale. Defendants Kaluzny Bros. and Kalunzy move to dismiss Walsh's claims for conspiracy to violate his constitutional rights and malicious prosecution complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants Rockdale,

1

Huizenga, and Dykstra move to dismiss Walsh's claims for malicious prosecution, conspiracy, and false arrest under Rule 12(b)(6).

## BACKGROUND

The Court takes the following allegations from the Complaint and treats them as true for purposes of these motions. *See Vinson v. Vermillion County, Ill.*, 776 F.3d 924, 925 (7th Cir. 2015).[1]

Defendant Kaluzny Brothers, Inc. is a corporation located in Rockdale, Illinois, that recycles animal by-products and cooking oils to make feed stocks. (Dkt. No. 1, Compl. at ¶10.) Kaluzny Bros. has operated in Rockdale for over 60 years and is one of the largest employers in Rockdale. (*Id.*) Defendants Robert Kaluzny and Thomas George held management positions at Kaluzny Bros. during the time period at issue. (*Id*. at ¶28.) Plaintiff Derek Walsh was employed by Kaluzny Bros. from January 2012 until he was terminated in February 2013. (*Id*. at ¶9.) During his employment at Kaluzny Bros., Walsh served as union steward on behalf of members of the United Food and Commercial Workers, Local 1546 ("UFCW") at Kaluzny Bros. from August 2012 until his termination. (*Id*. at ¶23.) As union steward, Walsh posted signs in the Kaluzny Bros.' break room, encouraged fellow UFCW member co-workers to vote against contracts offered by Kaluzny Bros., and held a meeting to discuss the possibility of a strike. (*Id.* at ¶¶26-33.) George condemned Walsh's efforts as union steward by telling Walsh to take down the posters from the break room and removing the posters himself. (*Id*. at ¶¶28-34.) Walsh's advocacy for UFCW members angered Kaluzny Bros., Kaluzny, and George. (*Id*. at ¶28.)

On January 2, 2013, Kaluzny noticed that a wooden spool of copper wire was missing from a boiler room at Kaluzny Bros. (*Id*. at ¶37.) The boiler room was unlocked. (*Id*. at ¶38.)

---

[1] The Court declines to consider Defendants' Kaluzny Bros. and Kaluzny's corrections of Walsh's facts because at the motion to dismiss stage the Court is required to accept all factual statements in the complaint as true. (Dkt. No. 43 at 4-2.)

2

During the Kaluzny Bros.'s search for the spool, Andrew Smith, another employee, told George about a conversation Smith had with Walsh. Smith reported that Walsh said scrap yards are "sticklers" about taking scrap and asked Smith if he had tried All American Recycling in Joliet. (*Id*. at ¶43.) Walsh further stated, according to Smith, that "he had copper" and Lemont Scrap paid the most for it. (*Id*.)

Kaluzny Bros. has a close relationship with the Rockdale Police. (*Id*. at ¶46.) Upon learning of the conversation between Smith and Walsh, on January 11, 2013, Kaluzny and George framed Walsh for theft of the copper wire in order to fabricate grounds for Walsh's termination. (*Id*. at ¶48.) That day, Defendant Officer John S. Huizenga met with Kalzuny and George. (*Id*. at ¶49.) Kaluzny told Huizenga that the missing copper wire was approximately three-inches wide, flat with black insulation, and inside the insulation were four copper cables covered in yellow, red, black, or green insulation. (*Id*.) In their meeting, George also relayed the conversation between Smith and Walsh to Huizenga. (*Id*. at ¶50.)

Huizenga next spoke with Amy Tuttila, an employee at Lemont Scrap. (*Id*. at ¶51.) She provided Huizenga a description of Walsh's car, a photograph of Walsh's truck with barrels in the flatbed, and a copy of the invoice from scrap sold by Walsh. (*Id*. at ¶51.) In addition, Tuttila gave Huizenga a picture of the scrap Walsh sold to Lemon Scrap depicting wire that does not match Kaluzny's description of the missing wire because it was not on a spool and lacks black insulation. (*Id*. at ¶¶53-54.) Huizenga showed these pictures to Kaluzny and George, who stated that that the wire was the missing wire from Kaluzny Bros. and the blue barrel in Walsh's truck belonged to Kaluzny Bros. (*Id*. at ¶¶55-56.) Huizenga and Rockdale Police Chief Robert J. Dykstra, who learned of Kaluzny and George's identifications later in January 2003, knew they

3

were false, yet relied on them because of the close relationship between Rockdale Police and Kaluzny Bros. (*Id*. at ¶¶57-59.)

On January 30, 2013, Dykstra arrested Tyrone Smego, a Lemont Scrap employee. (*Id*. at ¶62.) Dykstra and Huizenga coerced him into making the following statement:

> Dareck [sic] came to my house with Truck of wire found in ally [sic]. Ask [sic] me to us [sic] my ID at Lemont Scrap. Then tells me a uncle gave [it] to him to work off the money. Received 492.00 Approx in check. I whent [sic] to bank [sic] I gave cash to Derack [sic], Approx 30 days ago. (*Id*. at ¶64.)

The same day, Huizenga called Walsh's girlfriend, Trishianna Williams, telling her that he needed to speak with Walsh. (*Id*. at ¶48.) On January 31, 3013, Walsh went to see Huizenga at the Rockdale Police Station. (*Id*. at ¶74.) Walsh was handcuffed to a table in an interrogation room and was asked to waive his *Miranda* rights. (*Id*. at ¶¶75-77.) When Dykstra attempted to pressure Walsh into making a statement for approximately an hour, but Walsh was released when he refused. (*Id*. at ¶¶78-81.) Huizenga and Dykstra obtained an arrest warrant for Walsh on February 1, 2013, and arrested him that day. (*Id*. at ¶¶83-85.)

Walsh was subsequently charged with two counts of felony theft. (*Id*. at ¶86.) Kaluzny and George terminated Walsh on February 11, 2013 based on the fabricated theft. (*Id*. at ¶89.) His trial for theft began on November 13, 2013, and concluded with the judge granting Walsh's motion for a direction verdict because there was insufficient evidence that a crime in fact occurred. (*Id*. at ¶¶92-102.)

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Doe v. Village of Arlington Heights,* 782 F.3d 911, 914 (7th

Cir. 2015). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide sufficient facts so as to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The Court accepts all well-pled facts as true and views them in the light most favorable to the plaintiff. *Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## DISCUSSION

### I. Counts I and II: Section 1983 Claims for False Arrest

Walsh alleges that his Fourth Amendment right to be free from unreasonable search and seizure was violated by the January 31, 2013 and February 1, 2013 arrests. (Dkt. No. 1, Compl. at ¶¶104-19.) He consequently seeks relief for these constitutional violations under 42 U.S.C. § 1983. Rockdale, Huizenga, and Dykstra move to dismiss Counts I and II under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. To state a claim under Section 1983, a plaintiff must show (1) that he was deprived of a constitutional right or right established by federal laws (2) by a person acting under color of law. *Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). A plaintiff must also plead that the defendant lacked probable cause for the arrest. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). Probable cause exists if at the time of the arrest "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of

5

criminal activity on the suspect's part, probable cause exists." *United States v. Levy*, 990 F.2d 971, 973 (7th Cir. 1993).

Defendants Huizenga, Dykstra, and Rockdale argue that Walsh's claims for false arrest should be dismissed because they acted with probable cause. (Dkt. No. 46 at 5-7; Dkt. No. 57 at 2-4.) The Court finds it plausible when viewing the pleadings in the light most favorable to Walsh that the defendants lacked probable cause to arrest Walsh on either occasion. According to the well-pled facts before the Court, the only reliable evidence the Defendants had prior to Walsh's arrest was: (1) Smith's conversation with Walsh about his experience selling copper to Lemont Scrap; and (2) an invoice from Lemont Scrap purchasing scrap from Walsh. The photographs of Walsh's truck with barrels and the scrap that Walsh sold to Lemont Scrap, both of which Kaluzny and George identified as property of Kaluzny Bros, when viewed in the light most favorable to Walsh were not reliable pieces of evidence. According to Walsh's facts, it was obvious that the wire in the photo did not match Kaluzny's description as the wire was not on a spool and did not have black insulation. (Dkt. No. 24 at ¶53.) Moreover, neither the photographed wire nor the barrel bore any distinguishing marks that would lead Kaluzny or George to recognize it as Kaluzny Bros. property. (*Id.* at ¶¶51; 53.) As a result, under Walsh's facts, it was unreasonable for Huizenga and Dykstra to have relied on the two photos in their calculation of probable of cause to arrest Walsh. Smego's statement to Huizenga and Dykstra was unreliable as well because Smego was coered into giving it. (*Id.* at ¶63.)

The Court denies defendants' motion to dismiss Counts I and II because it is plausible that Huizenga and Dykstra arrested Walsh without probable cause. The remaining evidence relates to an innocuous scrap sale by Walsh to Lemont Scrap that was not indicative of criminal activity by Walsh. *See Levy*, 990 F.2d at 973. Evidence that Walsh simply sold copper to

Lemont Scrap is not sufficient to create probable cause because there is nothing linking the copper Walsh sold to the copper missing from Kaluzny Bros. Nowhere in Walsh's statements to Smith is there a hint of illegality surrounding the sale. Viewing the facts in the light most favorable to Walsh, it is plausible that an objectively reasonable police officer would have not have found probable cause to arrest Walsh. The Court thus denies the Defendants' motion to dismiss Counts I and II.

## II. Count III: Section 1983 Claim for Conspiracy to Violate Walsh's Fourth Amendment Rights

The Court also denies Defendants' Huizenga, Dykstra, Kaluzny Bros., Kaluzny, and Village of Rockdale motion to dismiss Count III of Walsh's complaint. To survive a motion to dismiss a Section 1983 claim for conspiracy to violate a constitutional right, Walsh must state that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Walsh must further identify the parties, general purpose, and approximate date of the conspiracy. *See Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). The Court finds that Walsh has alleged sufficient facts to plausibly assert that Huizenga, Dykstra, Kaluzny, and George conspired with each other from January to February of 2013. (Dkt. No. 24 at ¶¶48-49; 57-59.) Specifically, Walsh alleges that Kaluzny, George, and Huizenga conferred on January 11, 2013 to plan how to terminate Walsh by accusing him of stealing the wire. (*Id.* at ¶¶48-49.) He further alleges that Huizenga and Dykstra deliberately ignored the falsity of Kaluzny and George's statements because of the close relationship between the Rockdale Police and Kaluzny Bros. (*Id.* at ¶¶57-59.) Walsh also has sufficiently alleged that the general purpose of the

7

conspiracy was to have Walsh arrested without probable cause in an effort to manufacture grounds for his employment termination. He alleges that Kaluzny, George, and Unknown Kaluzny Bros. Employees sought to terminate Walsh because they were concerned about Walsh's activity as union steward. (*Id.* at ¶36.) And to fabricate grounds for terminating him, Walsh alleges that they conspired with Huizenga and Dykstra to prosecuting him for stealing the wire. (*Id.* at ¶36, 48.) State actors Huizenga, Dykstra, and other Rockdale police officers carried out this purpose by unreasonably relying on false statements by Kaluzny and George. (*Id.* at ¶¶57-59.) The Court thus rejects defendants' argument that Walsh's conspiracy claim rests only on the facts that Kaluzny Bros. was in business in Rockdale for over 60 years, is the largest employer in Rockdale, and Rockdale police officers socialize with Kaluzny. (Dkt. No. 43 at 7.) To the contrary, Walsh has alleged sufficient facts to make it plausible that defendants conspired to violate his Fourth Amendment rights by falsely arresting him. Accordingly, the Court denies defendants' motion to dismiss Count III.[2]

### III. Count IV: Malicious Prosecution under Illinois Law

The Court denies Defendants' Kaluzny Bro., Kaluzny, Huizenga, Dykstra, and Village of Rockdale motion to dismiss Count IV for malicious prosecution under Illinois law for the criminal proceedings they initiated against Walsh for theft. To state a claim for malicious prosecution under Illinois law, Walsh must plead facts demonstrating: "(1) defendant[s] commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 238 Ill.2d 248, 255 (2010). "[M]alice can be inferred when a defendant lacks probable

---

[2] The Court also rejects defendants' argument that Walsh pleaded himself out of the court for the conspiracy claim by alleging that there was probable cause to arrest Walsh for the reasons stated in Section I.

8

cause and the circumstances indicate a lack of good faith." *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011). Viewing the facts in Walsh's complaint in the light most favorable to him, Walsh has sufficiently alleged that: (1) defendants commenced the criminal charge for theft of Kaluzny Bros.' copper; (2) the charge terminated in Walsh's favor when the judge granted Walsh's motion for a directed verdict; (3) there was no probable cause that Walsh committed the theft; (4) defendants acted with malice because there was no probable cause, and they acted in bad faith by in commencing the theft charge knowing that the statements made by Kaluzny and George were false; and (5) Walsh suffered mental anguish, emotional pain and suffering, loss of income, and legal expenses as a result of defendants' actions. (Dkt. No. 24 at ¶¶125-34.) The Court therefore concludes that Walsh has alleged facts sufficient to plausibly prove malicious prosecution.

Defendants assert that Count IV should be dismissed because Walsh failed to allege special damages. (Dkt. No. 43 at 11.) But Walsh is not required to plead special damages because the allegedly malicious prosecution was for a criminal charge, not a civil one. Under Illinois law, no showing of special injury is required when the underlying prosecution is for a criminal charge. *See Cult Awareness Network v. Church of Scientology, Inc.*, 177 Ill.2d 267 (1997) (requiring special damages when the underlying suit is civil); *also, see e.g., Burge v. Harvey Police Officer*, No. 97 C 4569, 1997 WL 610045 at *3 (N.D. Ill. 1997) ("Because the malicious prosecution in the instant case is based on a criminal prosecution and was accompanied by Burge's arrest, we find that the 'special injury' requirement does not apply[.]"). As such, the Court declines to dismiss Count IV because Walsh did not allege special damages.

Defendants also seek to dismiss the complaint due to Plaintiff's inability to allege damages because they argue that although Plaintiff alleges he was arrested and jailed for the theft

9

of the wire, he was also later arrested and jailed for child sex offenses. Although Defendants make an odd gratuitous remark about Plaintiff's arrest actually saved victims of sexual abuse, this is not a legal basis for failing to allege damages and must be denied. Further, if his incarceration was due to other factors that would go to whether the damages were proximately caused by the Defendants' conduct; not whether they have been properly alleged.

**IV.    Defendants Huizenga and Dykstra are Not Entitled to Qualified Immunity**

Because Walsh has plausibly alleged violations of his Fourth Amendment rights, the Court finds Huizenga and Dykstra are not entitled to claim qualified immunity at the motion to dismiss stage. In applying qualified immunity, the Court should analyze first whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and second, whether that constitutional right was clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). No party disputes that the Fourth Amendment right to be free from unreasonable search and seizure was clearly established. Turning to the first prong, as reasoned in Section I the Court finds that when viewing the facts in the light most favorable to Walsh it is plausible that defendants violated his constitutional rights by acting without probable cause.

The issue of whether defendants violated Walsh's Fourth Amendment rights by arresting him without probable cause cannot be disentangled from disputed facts, and consequently defendants are not entitled to qualified immunity at this phase. *See Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996); *see also, e.g., Phipps v. Adams*, Civil No. 11-147-GM, 2012 WL 686721 at *2-3 (S.D. Ill. March 2, 2012) (finding defendants not entitled to qualified immunity at the motion to dismiss phase because whether plaintiff was arrested pursuant to probable cause was a disputed issue that cannot be resolved without a trial.). Defendants can overcome Walsh's

claims by proving that they did not violate his Fourth Amendment rights because there was probable cause to arrest him. But this is a factual issue debated by the parties that cannot be resolved as the motion to dismiss stage. *See Id.* Accordingly, the Court does not conclude that the Defendants' have qualified immunity at this stage.

## CONCLUSION

The Court denies defendants' motion to dismiss all five of Walsh's claims.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 10/30/2015